**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MARIE MICHELLE LANDON,

       Plaintiff,

v.                                No. CV 18-309 CG

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Plaintiff Marie Michelle Landon's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (the "Motion"), (Doc. 17), filed August 30, 2018; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 19), filed October 11, 2018; and Ms. Landon's *Reply in Support of Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (the "Reply"), (Doc. 22), filed December 4, 2018.

Ms. Landon filed applications for supplemental security income and disability insurance benefits on February 14, 2014, alleging disability beginning February 15, 2004. (Administrative Record "AR" 11). Ms. Landon claimed she was limited in her ability to work due to: adrenal exhaustion, chronic fatigue, and "environment/metabolic." (AR 287). Ms. Landon's applications were denied initially on August 1, 2014, and upon reconsideration on December 18, 2014. (AR 11). Ms. Landon requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 25, 2017, before ALJ Eric Weiss. (AR 40). Ms. Landon and Sandra Troat, Vocational Expert ("VE"),

testified at the hearing, and Ms. Landon was represented by attorney Michael Armstrong. (AR 40-70). At the hearing, Ms. Landon amended her onset date to February 14, 2014, the application date. (AR 44). Consequently, Ms. Landon's claim for disability insurance benefits was dismissed because the amended onset date post-dates the date she was last insured. *Id.*

On June 29, 2017, the ALJ issued his decision, finding Ms. Landon not disabled at any time between her alleged disability onset date through the date of the decision. (AR 26). Ms. Landon requested review by the Appeals Council, (AR 234), which was denied, (AR 1-4), making the ALJ's decision the Commissioner's final decision for purposes of this appeal.

Ms. Landon, who is still represented by Mr. Armstrong, argues in her Motion that the ALJ improperly rejected the opinions of her treating doctors: James Nolan, Ph.D.; and Thomas Hodge, Katy Whitcomb, and Inez Jones, Doctors of Oriental Medicine ("DOM"). (Doc. 17 at 15-24). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ erred in his consideration of the opinions of Dr. Nolan, Dr. Hodge, Dr. Whitcomb, and Dr. Jones, the Court finds that Ms. Landon's Motion should be **GRANTED** and this case be **REMANDED** to the Commissioner for further proceedings.

## I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir.

2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity;" (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.  Background

Ms. Landon claimed she was limited in her ability to work due to: adrenal exhaustion, chronic fatigue, and "environment/metabolic." (AR 287). At step one, the ALJ determined Ms. Landon had not engaged in substantial gainful activity since February 14, 2014, the alleged onset date. (AR 13). At step two, the ALJ found that Ms. Landon has the following severe impairments: mood disorder with depressive features, anxiety, depression, irritable bowel syndrome, lumbar multilevel disc, and osseous degenerative change. (AR 14). At step three, the ALJ determined that none of Ms. Landon's impairments, solely or in combination, meets or medically equals one of the listed impairments in 20 C.F.R. §§ 416.920(d), 416.925 and 416.926. (AR 15-16).

At step four, the ALJ found that Ms. Landon has the RFC to perform a limited range of work at the light exertional level, as defined at 20 C.F.R. § 416.967. (AR 16). Specifically, the ALJ found Ms. Landon is able to: lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; walk and stand for 6 hours per 8-hour workday; sit for 6 hours per 8-hour workday with normal breaks; occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds; occasionally stoop, crouch, kneel, and crawl; avoid more than occasional exposure to unprotected heights, dangerous moving machinery, extreme cold, and irritants such as dust, fumes, odors, and gases; understand, remember, and carry out simple instructions and make commensurate work-related decisions in a work setting with few changes; frequently interact with

supervisors, co-workers, and the public; and maintain concentration, persistence, and pace throughout the workday with normal breaks. *Id.*

In formulating Ms. Landon's RFC, the ALJ stated that he considered Ms. Landon's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 416.929, and considered opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927. (AR 17). The ALJ found that Ms. Landon's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the evidence in the record. *Id.*

Turning to the medical evidence in the record, the ALJ gave little weight to the State Agency consultants' opinions that Ms. Landon has no severe impairments because the ALJ found the evidence does not support such a finding at step two. (AR 20). The ALJ gave significant weight to the opinions of consultative examiners Anthanasios Manole, M.D., and Mary S. Loesher, Ph.D., because they examined Ms. Landon and their opinions are supported by other opinions and evidence in the record. (AR 21).

Next, the ALJ considered the opinions of Dr. Hodge, Dr. Whitcomb, and Dr. Jones, all Doctors of Oriental Medicine who treated Ms. Landon. (AR 22-23). He gave their opinions little weight for the following reasons: they are not acceptable medical sources; their opinions are given in "check-box style" forms prepared by Ms. Landon's representative; there are no treatment records from these sources; their opinions are based in part on "adrenal insufficiency," which is not a medically determinable impairment; and their opinions are inconsistent with other evidence in the record. *Id.*

6

The ALJ gave little weight to the opinions of Hilary Schlinger, Ms. Landon's treating nurse, for the same reasons. (AR 23). The ALJ gave "rather limited weight" to the opinions of Dr. Nolan, another treating physician, stating that there is little support for his opinions in his treatment notes, and his opinions are inconsistent with substantial evidence in the record and are partially based on Ms. Landon's reporting. (AR 22-23).

The ALJ also gave little weight to the opinions of Trey Stiles, a chiropractor who treated Ms. Landon, because he is not an acceptable medical source and he does not appear to have any training relevant to his opinions regarding her mental functioning. (AR 23). Next, the ALJ gave little weight to the opinions of Bruce Merchant, M.D., because Dr. Merchant did not treat or examine Ms. Landon. (AR 23). Finally, the ALJ gave limited weight to the opinions of Larry Eckstein, M.D., because they were offered years before Ms. Landon's alleged onset date. (AR 23-24).

The ALJ found that Ms. Landon has no past relevant work, so the ALJ proceeded to step five. (AR 24). At step five, the ALJ noted that Ms. Landon was 49 years old on the alleged disability onset date, and therefore classified as "a younger individual" in accordance with the Regulations. *Id.* The ALJ also determined that Ms. Landon has at least a high school education and is able to communicate in English. *Id.* The ALJ noted that the VE testified at the hearing that an individual with Ms. Landon's same age, education, work experience, and RFC could perform the jobs of cashier, marker, and photocopy machine operator. (AR 25). After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the VE's testimony and concluded that, because Ms. Landon is capable of performing work existing in

significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. § 416.920(g). *Id.*

## IV. Analysis

Ms. Landon contends the ALJ improperly rejected the opinions of Dr. Nolan, Dr. Hodge, Dr. Whitcomb, and Dr. Jones. (Doc. 17 at 15-24). In response, the Commissioner argues the ALJ properly considered these doctors' opinions and did not err in making his RFC determination. (Doc. 19 at 9-18).

ALJs must evaluate and weigh every medical opinion in the record. 20 C.F.R. § 416.927(b)-(c); *see also* SSR 06-03p, 2006 WL 2329939. Every medical source opinion should be weighed by the ALJ in consideration of the following applicable "deference factors":

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. § 416.927(c). Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that she ultimately assigns the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. Appx. 880, 884 (10th Cir. 2007) (unpublished).

In addition, "treating sources" are generally entitled to more weight than other sources, given their treatment relationship with the claimant. 20 C.F.R. § 416.927(d)(2).

Accordingly, ALJs must follow a particular, two-step process when evaluating and weighing opinions from treating sources. 20 C.F.R. § 416.927(b); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003). First, the ALJ must decide whether the treating source's opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "are not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). If the treating source's opinions satisfy both criteria, they are entitled to controlling weight. 20 C.F.R. § 416.927(c)(2).

If a treating source's opinions are not entitled to controlling weight, they are still entitled to deference. SSR 96-2p, 1996 WL 374188, at *4. In deciding how much weight to give a treating source's opinion, the ALJ must consider the factors set forth in 20 C.F.R. § 416.927(c)(1-6). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Krauser*, 638 F.3d at 1324 (citing *Watkins*, 350 F.3d at 1330); SSR 96-2p, 1996 WL 374188, at *5 (an ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" she gave to the opinion "and the reasons for that weight"); *but see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (an ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion."). Moreover, in rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Rather, an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence. *Id.*

An ALJ's reasoning is not sufficiently specific if she merely states an opinion is unsupported by or inconsistent with the medical evidence without further explanation. *Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 Fed. Appx. 788, 792-793 (10th Cir. 2008) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

*A.  Dr. Nolan's Opinions*

Ms. Landon first argues the ALJ improperly weighed and considered the opinions of Ms. Landon's treating psychologist, Dr. Nolan. (Doc. 17 at 15-21). Specifically, Ms. Landon contends that Dr. Nolan's treatment notes, Ms. Landon's activities, and other evidence in the record, all support Dr. Nolan's assessments as to Ms. Landon's mental abilities. *Id.* at 18-20. Ms. Landon also argues it was improper for the ALJ to reject Dr. Nolan's opinions because they were based in part on Ms. Landon's reporting. *Id.* at 21.

The Commissioner responds that the ALJ properly considered and rejected Dr. Nolan's opinions. (Doc. 19 at 11-14). The Commissioner contends the ALJ did not err by noting that Dr. Nolan's opinions were based in part on Ms. Landon's reporting, and that the ALJ was correct in finding Dr. Nolan's opinions were not supported by his exam findings and Plaintiff's activities. *Id.* at 12-14. In her reply, Ms. Landon maintains that the

ALJ's reasons for rejecting Dr. Nolan's opinions are not legally sufficient and are unsupported by the evidence in the record. (Doc. 22 at 2-4).

Dr. Nolan prepared a Medical Assessment of Ability to do Work-Related Activities (Mental) on April 11, 2017, in which he found that Ms. Landon is markedly limited in her abilities to: maintain attention and concentration for extended periods of time; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; work in coordination with or proximity to others without being distracted by them; complete a normal workday or workweek without interruptions from psychological-based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 1001). He also found she is moderately limited in her abilities to: understand, remember, and carry out detailed instructions; sustain an ordinary routine without special supervision; and make simple work-related decisions. *Id.* In addition, Dr. Nolan explained in a statement that Ms. Landon would have marked restrictions in all activities if she was pushed harder, had to be more active, or needed to sustain the activities for eight hours. (AR 1002).

The ALJ gave Dr. Nolan's opinions "rather limited" weight because they are not supported by his treatment notes or other evidence in the record. (AR 22-23). The ALJ also stated he discounted Dr. Nolan's opinions because they are based in part on Ms. Landon's reporting. (AR 23). The ALJ's RFC determination does not incorporate Dr. Nolan's findings relating to Ms. Landon abilities to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and complete a normal workday and workweek without interruptions from psychological-based symptoms; and perform at a consistent pace without an unreasonable number

and length of rest periods. *See* (AR 16). Therefore, the ALJ was required to adequately explain why he did not include limitations in his RFC determination that reflect Dr. Nolan's findings. *See* SSR 96-8p, 1996 WL 374184, at *7 (explaining that, if an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted).

First, the ALJ stated he rejected Dr. Nolan's opinions because there is little support in his treatment notes for his findings. (AR 23). The ALJ relied on Dr. Nolan's descriptions in his treatment notes of Ms. Landon presenting as unremarkable on mental status examination, and that her appearance, behavior, affect, thought processes, perception, insight, sleep, orientation, speech, mood, thought content, judgment, and appetite, were all within normal limits. *Id.* (citing AR 984, 986, 989, 992, 995, 998). However, the ALJ did not discuss the treatment notes that support Dr. Nolan's later findings, such as his diagnosis for moderate depression, that he was working with Ms. Landon on strategies for stress and anxiety management, and his findings of limitations in her abilities to pay attention, focus, and concentrate. *See* (AR 985-99). He also did not discuss Dr. Nolan's notes that in March 2017, Ms. Landon was "still experiencing VERY significant distress," (AR 993, emphasis in original), and at another appointment that month, she was "in so much chronic distress that it is amazing that she gets done what she does," (AR 994).

The Commissioner argues that even if Dr. Nolan's treatment notes were susceptible to more than one interpretation, the Court should affirm the ALJ's decision because it is supported by substantial evidence. (Doc. 19 at 13). The Commissioner's argument is misplaced, however, because "in addition to discussing the evidence

supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Moreover, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Therefore, the ALJ erred by failing to discuss the treatment notes that supported Dr. Nolan's findings of multiple mental limitations, and by failing to explain why he rejected that evidence.

Next, the ALJ stated he rejected Dr. Nolan's opinions because they are not supported by other evidence in the record, such as Ms. Landon's abilities to teach yoga, shop in stores, and drive a car. (AR 23). Ms. Landon first contends that these activities do not demonstrate that she can perform work on a regular and sustained basis because she only teaches yoga up to two and a half hours a week, and only shops and drives when necessary and as little as possible. (Doc. 17 at 19); (Doc. 22 at 2-3). In addition, Ms. Landon argues the ALJ failed to discuss other medical evidence in the record that supports Dr. Nolan's findings that Ms. Landon is unable to engage in activities for prolonged periods of time and is unable to complete a normal workday or workweek. (Doc. 17 at 19-20) (citing AR 351-52, 354-55, 385, 414, 725, 816, 819, 855).

The ALJ's statement that Dr. Nolan's opinions are not supported by other evidence in the record is not accurate because there are multiple medical opinions supporting his findings. For example, Dr. Loescher found that Ms. Landon has moderate to marked limitations in her ability to respond appropriately to usual work situations and changes in a routine work setting, and that her ability to function with others would be

impacted by her ability to do work-related tasks in an appropriate manner. (AR 917, 919). Similarly, Dr. Eckstein opined that Ms. Landon could not complete a normal workday or workweek due to her fibromyalgia and chronic fatigue syndrome, (AR 414), and Dr. Hodge, Dr. Whitcomb, and Dr. Jones all found that Ms. Landon was required to take frequent breaks due to severe fatigue, (AR 816, 819, 855). The ALJ's rejection of Dr. Nolan's opinions without discussing the evidence that supports them is legal error. *See Clifton*, 79 F.3d at 1010 (an ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"). Moreover, while the ALJ did not err by considering Ms. Landon's reported activities, his reliance on that evidence alone is not a sufficient basis to reject Dr. Nolan's opinions. *See McGoffin*, 288 F.3d at 1252 (explaining that an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence); *see also Talbot v. Heckler*, 814 F.2d 1462, (10th Cir. 1987) (finding a claimant's "limited activities in themselves do not establish that one can engage in light or sedentary work activity").

Finally, the ALJ rejected Dr. Nolan's opinions because they were based in part on Ms. Landon's own reporting. (AR 23). The Commissioner contends the ALJ did not err because ALJ's may consider whether a doctor's opinion is adequately supported. (Doc. 19 at 12). The Tenth Circuit, however, has held that an ALJ's rejection of a medical opinion because the doctor relied in part on a claimant's statements is legal error. In *Langley v. Barnhart*, the Tenth Circuit found the ALJ improperly rejected a doctor's opinion because it was based on the claimant's subjective complaints, and explained that "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory

medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." 373 F.3d at 1121 (citing *McGoffin*, 288 F.3d at 1252); *see also Victory v. Barnhart*, 121 Fed. Appx. 819, 823-24 (10th Cir. 2005) (unpublished) ("The ALJ's finding that [the treating physician's] opinion was based on the claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption."). Moreover, the Tenth Circuit has also found that "the practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements," and that an ALJ's rejection of a psychologist's opinion because it is based in part on a claimant's statements "impermissibly put[s] the ALJ in the position of judging a medical professional on the assessment of medical data." *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759-60 (10th Cir. 2005) (unpublished). Therefore, the Court finds that the ALJ's rejection of Dr. Nolan's opinions because they were based in part on Ms. Landon's own reporting is in error.

For the reasons stated above, the Court finds that the ALJ failed to provide sufficient support for his decision to reject Dr. Nolan's opinions.

### B.  Dr. Hodge, Dr. Whitcomb, and Dr. Jones' Opinions

Ms. Landon also contends the ALJ erred in his consideration of the opinions of Dr. Hodge, Dr. Whitcomb, and Dr. Jones. (Doc. 17 at 22-24). Ms. Landon argues the ALJ's reasons for rejecting these doctors' opinions are invalid and are not supported by the record. *Id.* The Commissioner responds that the ALJ provided sufficiently specific reasons for discounting their opinions, and that those reasons are supported by the record. (Doc. 19 at 15-18).

Ms. Landon received treatment by Dr. Hodge, Dr. Whitcomb, and Dr. Jones, or by others in their practice, a total of 65 times from December 2014 to September 2016. (AR 824-34). In September 2016, each doctor prepared a "Medical Assessment of Ability to do Work-Related Activities (Physical) and (Non-Physical)," in which they all opined that Ms. Landon: could not maintain physical effort for long periods due to pain and fatigue; could stand less than two hours in an eight-hour day; must alternate between sitting and standing as needed; had limited pushing and pulling abilities in her upper extremities; and could only occasionally stoop, kneel, crouch, or crawl. (AR 816-17, 819-20, 855-56). In addition, they found that Ms. Landon has moderate to marked limitations in her abilities to: complete a normal workday and workweek; perform at a consistent pace without an unreasonable number of rest periods; maintain attention and concentration for extended periods; perform activities within a schedule; work in coordination with, or proximity to, others without being distracted by them; and make simple work-related decisions. *Id.* The ALJ stated he gave their opinions little weight for the following reasons: they are not acceptable medical sources; their opinions are given in "check-box style" forms; they provided no treatment records; their opinions are based in part on "adrenal insufficiency," which is not a medically determinable impairment; and their opinions are inconsistent with other evidence in the record. (AR 21-22).

The ALJ's RFC determination only accounts for the finding by these doctors that Ms. Landon can occasionally stoop, kneel, crouch, or crawl. (AR 16). Therefore, the ALJ was required to adequately explain why he did not include limitations in his RFC determination that reflect their remaining findings. *See* SSR 96-8p, 1996 WL 374184, at

*7 (explaining that, if an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted).

The ALJ's first reason for discounting these doctors' opinions is that they are not acceptable medical sources. (AR 23). Pursuant to 20 C.F.R. § 416.913(a)(1)-(5), "[a]cceptable medical sources" include physicians, psychologists, certain optometrists and podiatrists, and certain speech-language pathologists. Since Dr. Hodge, Dr. Whitcomb, and Dr. Jones are Doctors of Oriental Medicine, they are "other" medical sources pursuant to 20 C.F.R. § 416.913(d)(1). The distinction between acceptable medical sources and other medical sources "is necessary because information from other [medical] sources cannot establish the existence of a medically determinable impairment. . . . Further, only acceptable medical sources can give medical opinions and be considered treating sources whose medical opinions may be entitled to controlling weight." *Bowman v. Astrue,* 511 F.3d 1270, 1275 n.2 (10th Cir. 2008) (citing SSR 06-03p, 2006 WL 2329939, at *2).

Nevertheless, the opinions of "other" medical sources should still be weighed. Indeed, the Regulations state that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 416.927(c). Social Security Ruling 06-03p clarifies that the factors used in weighing medical opinions of acceptable medical sources "set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d) apply equally to 'all opinions from medical sources who are not acceptable medical sources as well as from other [non-medical] sources.'" *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting SSR 06-03p, 2006 WL 2329939at *4). It follows that:

> depending on the particular facts in a case, and after applying the factors
> for weighing opinion evidence, an opinion from a medical source who is

> not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

*Frantz*, 509 F.3d at 1302 (quoting SSR 06-03p, 2006 WL 2329939, at *5). Therefore, given the treatment provided to Ms. Landon by Dr. Hodge, Dr. Warwick, and Dr. Jones, the ALJ was required to consider and adequately explain why he rejected their opinions as to her limitations, even though they are not "acceptable medical sources."

The ALJ's next reason for rejecting these doctors' opinions is that they were given in "check-box style" forms prepared by Ms. Landon's representative. (AR 22). The Tenth Circuit has explained that medical source opinions on check-box forms are not improper if they are supported by substantial evidence, either on the form itself or elsewhere in the record. *See Anderson v. Astrue*, 319 Fed. Appx. 712, 723-24 (10th Cir. 2009) (unpublished) (reversing the ALJ's decision to discount physicians' check-box forms where the physicians also recorded limited clinical comments and other medical evidence supported the conclusions in the forms); *see also Fierro v. Colvin*, 2014 WL 12791246, at *4 (D.N.M. May 28, 2014) (unpublished) (rejecting the Commissioner's argument that the ALJ could reject a treating physician's opinion merely because it was provided on a check-box form, and finding that the opinion was supported by treatment notes, treatment plans, and other documentation).

Here, each of these doctors' opinions is accompanied by several comments explaining their findings, such as that Ms. Landon has weak muscular functioning, severe pain and fatigue, adrenal insufficiency, a tendency to drop things often, and a

weak grip. (AR 816-17, 819-20, 855-56). Dr. Jones also noted that Ms. Landon is "always in a state of pain throughout body," and that her "level of pain is spiked when she overdoes even modest activity." (AR 856). Additionally, the doctors' findings are supported by their treatment notes, which document Ms. Landon's pain, fatigue, and other symptoms, during office visits. (AR 824-34). Finally, the doctors' findings are supported by several medical opinions in the record, such as Dr. Nolan's, Dr. Loescher's, and Dr. Eckstein's findings of moderate to marked limitations in Ms. Landon's mental abilities, such as her abilities to work with others and complete a normal workday or workweek. (AR 414, 917, 919, 1001-02). Because Dr. Hodge, Dr. Whitcomb, and Dr. Jones' opinions are supported by other evidence, the ALJ erred in discounting them on the basis that they were prepared on check-box forms.

Next, the ALJ stated he discounted these doctors' opinions because they provided no treatment records. (AR 21-22). This statement is belied by the record, which includes eleven pages of treatment records documenting Ms. Landon's pain, fatigue, and other symptoms. (AR 824-34). The Commissioner acknowledges that there are records from these doctors but argues that they "merely show the dates of visits and Plaintiff's subjective reports." (Doc. 19 at 16). This is a *post hoc* rationalization by the Commissioner because the ALJ did not state that found their treatment notes were not informative or substantive. *See Robinson v. Barnhart*, 355 F.3d 1078, 1084 (10th Cir. 2004) (explaining that an ALJ's decision must be evaluated "based solely on the reasons stated in the decision"). Therefore, the ALJ's statement that these doctors did not provide treatment records is not supported by the record and does not provide an adequate basis for rejecting their opinions.

The ALJ also discounted these doctors' opinions because they are based in part on their findings that Ms. Landon has "adrenal insufficiency," which the ALJ states is not a medically determinable impairment. (AR 22). The Commissioner argues that this is a valid reason for discounting these medical opinions because "only medically determinable impairments are considered in assessing RFC." (Doc. 19 at 17) (citing 20 C.F.R. § 416.945). A determination of whether an impairment is medically determinable is made at step two of the SEP, and a medically determinable impairment is defined as one that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 416.920(c), 416.921. At step four, however, the regulations require an ALJ's RFC assessment to be "based on all the relevant evidence" in a claimant's record, such as medical history, laboratory findings, effects of treatment and symptoms including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations. 20 C.F.R. § 416.945(a)(1)-(3), (e); SSR 96-8p, 1996 WL 374184, at *5.

Accordingly, contrary to the Commissioner's assertion, the Regulations do not limit an ALJ's RFC assessment to medically determinable impairments. Moreover, the Tenth Circuit has explained that any error at step two in finding an impairment non-medically determinable can "be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC." *Ray v. Colvin*, 657 Fed. Appx. 733, 734 (10th Cir. 2016) (unpublished); *see also Wells v. Colvin*, 727 F.3d 1061, 1069 (10th

Cir. 2013) (finding the ALJ erred in relying on his step-two findings to conclude at step four that the claimant had no mental limitations that should be included in the RFC). Therefore, the ALJ was required to consider the opinions of Dr. Hodge, Dr. Whitcomb, and Dr. Jones, regardless of whether they were partially based on a non-medically determinable impairment.

Finally, the ALJ stated he rejected these doctors' opinions because they are inconsistent with other evidence in the record, such as Ms. Landon's yoga teaching, shopping, driving, and attending spiritual retreats. (AR 22-23). In doing so, the ALJ again relied solely on Ms. Landon's activities and failed to discuss the multiple medical opinions in the record that support these opinions. In discounting Dr. Hodge, Dr. Whitcomb, and Dr. Jones' opinions, the ALJ failed to note that they are supported by Dr. Nolan's findings of moderate to marked mental limitations, (AR 1001), Dr. Loescher's finding of limitations in Ms. Landon's ability to function with others, (AR 917, 919), or Dr. Eckstein's opinion that Ms. Landon cannot complete a normal workday or workweek due to her fibromyalgia and chronic fatigue syndrome, (AR 414). The ALJ also failed to discuss Ms. Schlinger's almost identical findings that Ms. Landon cannot maintain physical effort for long periods due to pain and fatigue; can stand less than two hours in an eight-hour day; must alternate between sitting and standing as needed; has limited pushing and pulling abilities in her upper extremities; and has marked limitations in completing a workday or workweek. (AR 672-73). The ALJ's rejection of Dr. Hodge, Dr. Whitcomb, and Dr. Jones' opinions without discussing the evidence that supports them is legal error. *See Clifton*, 79 F.3d at 1010 (an ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects"); SSR 96-8p, 1996 WL 374184, at *7 (providing that ALJs "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved").

Based on the foregoing, the Court finds that the ALJ did not properly consider the opinions of Dr. Hodge, Dr. Whitcomb, and Dr. Jones.

## V.    Conclusion

For the foregoing reasons, the Court finds that the ALJ failed to properly consider the opinions of Dr. Nolan, Dr. Hodge, Dr. Whitcomb, and Dr. Jones.

**IT IS THEREFORE ORDERED** that Ms. Landon's *Motion to Reverse and Remand for a Rehearing With Supporting Memorandum*, (Doc. 17), is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings.


_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE